United States District Court
Middle District of North Carolina
Case No.

| | |
|---|---|
| Phyllis Arrington-McGee, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) |
| | ) |
| Life Insurance Company of | ) |
| North America, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

## Complaint

This is plaintiff Phyllis Arrington-McGee's complaint against defendant Life Insurance Company of North America ("LINA").

## Nature of Controversy

1. Ms. Arrington-McGee worked as an Executive Administrative Assistant for Lenovo (United States), Inc. in Research Triangle Park, North Carolina until January 12, 2017. She was unable to continue working beyond that date due cervical spine pain; pain and weakness in her arms, elbows, forearms, hands, and fingers; balance problems, and reduced hand coordination.

2. Lenovo provided long-term disability coverage to Ms. Arrington-McGee and other eligible employees pursuant to an insurance policy issued by LINA and bearing group policy number FLK0960764 (the "Policy"). The Policy obligates LINA to make eligibility determinations and to pay policy benefits from its funds.

3. LINA approved Ms. Arrington-McGee for short-term disability for 180 days under Lenovo's short-term disability plan and then began paying her long-term disability benefits under the Policy.

4. LINA informed Ms. Arrington-McGee by a letter dated July 23, 2018 that her benefits had been terminated because she no longer met the Policy's definition of disability. Ms. Arrington-McGee appealed LINA's denial of benefits through the review process provided by the Policy. LINA informed Ms. Arrington-McGee by a letter dated May 6, 2020 that her final appeal had been denied, that she had exhausted her administrative remedies under the Policy, and that she had the right to bring a legal action under section 502(a) of ERISA.

5. Ms. Arrington-McGee seeks to recover from LINA long-term disability benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). The relief Ms. Arrington-McGee seeks is a determination that she is entitled to long-term benefits retroactive to July 19, 2018, prejudgment interest, monthly benefits for as long as she remains entitled to benefits under the terms of the Policy, and an award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

Parties, Jurisdiction, and Venue

6. Ms. Arrington-McGee is a citizen and resident of Durham County, North Carolina.

7. Defendant LINA is an insurance company and is authorized to conduct business in this state by the North Carolina Department of Insurance.

8. The Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 1132(e)(1). Venue is proper in this district pursuant to 29 U.S. C. § 1132(e)(2) because acts and occurrences that gave rise to Ms. Arrington-McGee's claim took place in this district.

Additional Facts

9. The Policy provides the following definition of "disabled" and "disability" that applies after benefits have been payable for 12 months:

> After Disability Benefits have been payable for 12 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
>
> 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
>
> 2. unable to earn 60% or more of his or her Indexed Earnings.

Under the Policy Ms. Arrington-McGee is entitled to benefits if her illness prevents her from performing the material duties of any occupation and earning 60% or more of her Indexed Earnings.

10. On January 12, 2017, Ms. Arrington-McGee underwent a right elbow lateral epicondylar release with extensor carpi radialis brevis debridement and repair and radial tunnel decompression by Dr. J. Mack Aldridge III.

11. Dr. Aldridge completed a Medical Request Form at Cigna's request on January 25, 2017. He wrote that Ms. Arrington-McGee should remain out of work for six to eight weeks post-surgery.

12. Ms. Arrington-McGee was seen by Dr. Christopher Robert Brown of Duke Health's Department of Orthopedic Surgery on April 12, 2017. Her chief complaints

3

were radiating pain in her upper arms, forearms, and hands; problems with balance and hand coordination; and diminished grip strength. Dr. Brown recommended an MRI of the cervical spine.

13. Ms. Arrington-McGee underwent an MRI of the cervical spine the same day. The report states that Ms. Arrington-McGee had multilevel degenerative disc disease, uncovertebral and facet arthrosis, most pronounced at C5-C6, where there was moderate bilateral neural foraminal and moderate canal narrowing, and at C6-C7, where there was moderate left foraminal narrowing.

14. Dr. Brown wrote in a letter dated April 27, 2017 that Ms. Arrington was scheduled for surgery on July 7, 2017 and would not be able to work until at least six weeks after her surgery.

15. On July 7, 2017, Dr. Brown performed an anterior cervical discectomy and fusion at C5-C6 and C6-C7.

16. By a letter dated August 9, 2017, LINA advised Ms. Arrington-McGee that her claim for long-term disability benefits had been approved effective July 11, 2017. LINA commenced paying Ms. Arrington-McGee a monthly benefit of $3,807 per month.

17. On December 5, 2017, Ms. Arrington-McGee had an initial appointment with Dr. Fraser Leversedge at the Hand, Upper Extremity and Microvascular Surgery Clinic at Duke Health. Ms. Arrington-McGee stated that she had right upper extremity pain and decreased sensation and function of her right hand. She explained that her right hand pain woke her up at night. She was unable to shake hands with her right hand due to pain. Dr. Leversedge noted that Ms. Arrington-McGee was limited in flexion and

extension in all fingers of her right hand, was unable to make a fist, unable to fully extend her MCP joints, and had increased extensor lag on the ring finger. She had lateral elbow pain with resisted finger extension and shooting pain at the lateral elbow. Ms. Arrington-McGee was tender to palpation about the ulnar nerve proximal to the elbow. She had positive radial nerve compression in her upper arm compared to the left side. Dr. Leversedge found tenderness to palpation in her right hand and decreased sensation in the thumb, index, and long fingers. She had a positive Spurling's test on the left. Dr. Leversedge diagnosed that Ms. Arrington-McGee had right carpal tunnel syndrome and right cubital tunnel syndrome. He wrote that Ms. Arrington-McGee's symptoms were "multifactorial" due to her cervical spine symptoms. He recommended a right carpal tunnel release and a right cubital tunnel release.

18. LINA informed Ms. Arrington-McGee by a letter dated January 10, 2018 that under the Policy the definition of disability would change as of July 11, 2018 and that it had begun a review to determine whether she would remain eligible for benefits beyond that date.

19. On January 31, 2018, Ms. Arrington-McGee had an appointment with Dr. Steven Silverman for a follow-up for back pain in her upper thoracic spine. She described her pain as aching and sharp, variable in severity, and constant with intermittent worsening. Her pain score was a six out of ten. She had no radicular complaints. Dr. Silverman reviewed x-rays and noted that Ms. Arrington-McGee had tenderness over her upper thoracic spine. He recommended acupuncture and a follow-up appointment with Dr. Brown in ten weeks.

5

20. On February 4, 2018, Ms. Arrington-McGee underwent a right carpal tunnel release and right cubital tunnel release by Dr. Leversedge.

21. Ms. Arrington-McGee had a follow-up appointment with Dr. Leversedge on February 22, 2018. Ms. Arrington-McGee described her pain level as a seven on a ten-point scale. She stated the numbness and tingling in her fingers was much improved since the surgery and she was "more or less happy with the outcome of the surgery." She had full range of motion of the elbow but had some tenderness in the lateral epicondyle and at the base of the thumb bilaterally. When she extended her wrist or fingers she experienced radiating pain up her arm. Dr. Leversedge provided an out-of-work note which stated that Ms. Arrington-McGee was to remain out of work until the next scheduled appointment on March 8, 2018.

22. Dr. Leversedge provided another out-of-work note dated March 6, 2018. He also completed a Physical Ability Assessment form on March 8, 2018, which stated that Ms. Arrington-McGee could not reach overhead and was able to perform the following activities only occasionally (zero to 2.5 hours per day): reaching at desk level, reaching below the waist, fine manipulation, simple grasping, and firm grasping. He wrote that Ms. Arrington-McGee could lift and carry one pound occasionally and nothing heavier and could not climb or crawl. He added, "No work until examined by a cervical spine surgeon."

23. On March 21, 2018, Ms. Arrington-McGee had an appointment for a left upper extremity EMG/NCS. The study revealed electrodiagnostic evidence of moderate

left median neuropathy at the distal wrist crease consistent with left carpal tunnel syndrome.

24. On March 22, 2018, Ms. Arrington-McGee underwent another MRI of the cervical spine. The report showed bony ridging at the C6-C7 level with mild spinal canal narrowing, multilevel degenerative disk disease with small central disc protrusions at C2-C3 and C3-C4, and severe multilevel neural foraminal narrowing at C6-C7.

25. Ms. Arrington-McGee had a follow-up appointment with Dr. Leversedge on May 3, 2018. She complained of pain at multiple sites in her neck; right-sided lateral arm pain, lateral elbow pain, dorsal hand pain and pain in the middle and index fingers and thumb; and left-sided pain in her thumb, index finger, and middle finger. Dr. Leversedge's detailed physical exam findings include the following:

> A&Ox3
> NAD
> Positive Spurling's
> RUE:
> Skin CDI. Incision over the lateral forearm and elbow is clean dry intact and well-healed. Incision over the
> medial elbow and palm are clean dry intact and well-healed.
> No obvious deformity of the shoulder, arm, elbow, forearm, wrist, hand
>
> Mild to moderate tenderness to palpation of the triceps muscle, triceps tendon
> No tenderness palpation of the biceps muscle, and biceps tendon
> Mild to moderate tenderness to palpation over the olecranon, medial epicondyle
> Severe tenderness to palpation over the lateral condyle
> Painful PROM/AROM of the elbow: 15-130 extension and flexion; 70/70 pronation and supination
> 5/5 motor elbow flexion/extension/pronation/supination
>
> Mild tenderness to palpation at the distal radius/ulna and wrist
> No tenderness to palpation over the palm ·
> Limited PROM/AROM of the wrist. 30° of flexion and extension.
> Patient does not produce a composite fist due to soreness particularly at the index finger with all fingers
> approximately 1 cm away from the palm

Sensation intact to light touch in the median, ulnar, and radial nerve distributions
5/5 motor EPL/FPL/FDS/FDP/EDC/IO
2+RP

LUE:
Skin CDI
No obvious deformity of the shoulder, arm, elbow, forearm, wrist, hand

No tenderness to palpation at the distal radius/ulna and wrist
Mild to moderate tenderness to palpation over the palm at the A 1 pulley of the index finger
Painless and full PROM/AROM of the wrist
Does not produce a composite fist due to stiffness and pain of all fingers particularly the index finger with all fingers approximately 1 cm away from the palm
Sensation intact to light touch in the median, ulnar, and radial nerve distributions

5/5 motor EPL/FPL/FDS/FDP/EDC/IO
2+RP

Negative Durkan's on the left
Negative Tinel's at the wrist on the left
Negative elbow compression test on the left
Negative Tinel's at the elbow on the left

26. LINA informed Ms. Arrington-McGee by a letter dated July 18, 2018 that it had completed its review and had determined that she was no longer disabled as defined by the Policy. The letter states that her file was reviewed by an Occupational Medicine Medical Director and a Nurse Case Manager, who opined that the opinions of Ms. Arrington-McGee's providers that she was unable to work were not well supported by medically acceptable clinical or laboratory diagnostic techniques and were inconsistent with other substantial evidence in the claim file. LINA concluded that Ms. Arrington-McGee could perform any occupation at the sedentary level of physical demand and advised that she had 180 days from her receipt of the letter to appeal LINA's decision.

8

27. On August 20, 2018, Ms. Arrington-McGee saw Cara Lee Gambill, PA at Duke Orthopaedics at Page Road. Ms. Arrington-McGee advised Ms. Gambill that she had undergone a right carpal tunnel release and a right cubital tunnel release by Dr. Leversedge in February 2018 and an ACDF at C5-C7 in July 2017. Ms. Arrington-McGee stated that she was experiencing left wrist pain and numbness and tingling in her left thumb, index, and long fingers and had been wearing removable braces on both wrists. She rated the severity of the pain in her left wrist as five on a ten-point scale. Ms. Gambill's physical examination findings reflect that Ms. Arrington-McGee had tenderness in her left hand, wrist, and elbow, tenderness in her right wrist and elbow, decreased sensation in the left median region, positive Phalen's sign in the left wrist, positive Tinel's sign in the left wrist, positive Durkan's test in the left wrist, and pain with resisted wrist extension in the left and right. Ms. Gambill offered a cortisone injection for Ms. Arrington-McGee's left wrist, which Ms. Arrington-McGee declined because the last cortisone injection in her right wrist caused her blood sugar level to rise to a dangerous level. Ms. Gambill prescribed a Medrol dose pack. She noted that Ms. Arrington McGee was scheduled to see Dr. Brown on August 22, 2018 and Dr. Leversedge on September 20, 2018.

28. Ms. Arrington-McGee saw Dr. Brown on August 22, 2018 for a follow-up appointment. A cervical epidural steroid injection she had received had not provided any relief of her arm pain. Dr. Brown wrote that Ms. Arrington-McGee still had symptoms of neuropathic pain but that there was "no anatomic explanation for this on her MRI." Dr.

Brown recommended that Ms. Arrington-McGee undergo an evaluation for a spinal cord stimulator and wanted to see her again in six months.

29. Dr. Brown referred Ms. Arrington-McGee to Dr. Gloria Liu of the Duke Spine Center. Ms. Arrington-McGee saw Dr. Liu on September 6, 2018. Ms. Arrington-McGee told Dr. Liu that she was experiencing pain, numbness, and tingling in her neck, arms, and hands. Dr. Liu's physical examination revealed tenderness to palpation in the rhomboid area, right greater than left, and reduced strength in finger flexion and finger abduction due to pain. Dr. Liu was recommended another EMG study to determine if Ms. Arrington-McGee's right arm pain was radiating from her cervical spine.

30. On September 20, 2018, Ms. Arrington-McGee saw Dr. Leversedge for a follow-up appointment. Dr. Leversedge's physical examination findings for the right arm include severe tenderness to palpation in the distal lateral triceps, down the lateral epicondyle, in her proximal wrist/digital extensors, and in multiple non-specific additional locations. In the left arm, Dr. Leversedge found severe tenderness to palpation in the forearm and multiple non-specific additional locations of soft tissue tenderness. Dr. Leversedge wrote in his report that Ms. Arrington-McGee had multiple problems, including "a large component of cervical radiculopathy" and "clinical and electrodiagnostic evidence of moderate left carpal tunnel syndrome which is nonresponsive to conservative treatment measures." Dr. Leversedge recommended a carpal tunnel release of the left wrist.

31. Dr. Leversedge performed a left carpal tunnel release on Ms. Arrington-McGee on October 1, 2018.

32. On October 15, 2018, Ms. Arrington-McGee had her first post-operative visit following her left carpal tunnel release surgery. She reported to the physician's assistant, Joseph Shinnick, that she was experiencing basilar thumb pain, no pain at the surgical site, and improvement in numbness and sensation. Mr. Shinnick's physical examination found mild tenderness, diminished range of motion, and mild hand effusion.

33. Ms. Arrington McGee was referred to the Duke Spine Center by Dr. Liu for an evaluation of her arm and hand pain. Ms. Arrington-McGee met with Beth Ann Parente, PA-C on October 26, 2018. Her physical exam findings include decreased intrinsic and grip strength and intrinsic pain. Ms. Parente advised Ms. Arrington-McGee of the option of a cervical spinal cord stimulator for treatment of her elbow and hand pain. She informed Ms. Arrington-McGee of the nature of the procedure and advised that she would need to have a cervical spine MRI and a psychological evaluation.

34. Ms. Arrington-McGee had her next post-operative visit with Dr. Leversedge on November 15, 2018. She reported that she was having pain, weakness, and swelling, persistent numbness and paresthesias proximal to her incision, intermittent paresthesias to her index finger, and reduced grip strength. Ms. Arrington-McGee rated her current pain level as a two on a ten-point scale but stated that it had averaged a five out of ten during the past week.

35. Dr. Parente referred Ms. Arrington-McGee to Dr. Katherine Lynn Applegate, Ph.D. for a psychological evaluation for the spinal cord stimulator. Dr. Applegate diagnosed Ms. Arrington-McGee as suffering from adjustment disorder with mixed anxiety and depressed mood.

36. Ms. Arrington-McGee saw Elizabeth Ashley Holler at Duke Urgent Care on January 3, 2019 for right shoulder and clavicle pain. Ms. Arrington-McGee reported that she had been experiencing right chest wall pain just below the clavicle for two months. She rated her pain at a four out of ten while resting and an eight out of ten with shoulder movements, coughing, and palpation. Ms. Holler's physical exam showed decreased range of motion in the right shoulder due to pain in the chest wall and tenderness to palpation below the clavicle. Ms. Holler prescribed a Toradol injection and Voltaren EC tablets. Ms. Arrington-McGee was instructed to apply heat and ice and to take Tylenol as needed.

37. In a letter dated January 11, 2019, Ms. Arrington-McGee's attorney, Vance Jennings, advised LINA that Ms. Arrington-McGee was appealing the denial of her benefits. In support of the appeal, Mr. Jennings submitted additional medical records, disability forms completed by Dr. Brown on January 31, 2019 and March 13, 2019, respectively, and the Social Security Administration's notice of approval of Ms. Arrington-McGee's application for Social Security disability benefits.

38. Ms. Arrington-McGee had her next appointment with Dr. Leversedge on January 15, 2019. Dr. Eliana Saltzman participated in the evaluation and authored the report. Ms. Arrington-McGee rated her pain as a four on a ten-point scale. She described her pain as radiating over the radial aspect of her left elbow, but she was not experiencing any acute trauma, numbness, or tingling in the hand. Ms. Arrington-McGee also reported pain in her fingers. The physical examination findings included in the right upper extremity severe tenderness to palpation at the distal aspect of the antecubal fossa and

multiple non-specific additional locations of soft tissue tenderness. In the left upper extremity, the physical exam findings included severe tenderness to palpation along the anatomic course of the radial nerve in the forearm, multiple nonspecific additional locations of soft tissue tenderness including the antecubital fossa area of the left elbow, tenderness over the left hand dorsal PIP joint with limited range of motion, increased pain with wrist extension, and tenderness along the posterolateral aspect of the brachium that extends over the radial antebrachium in the C6-C7 distribution. Dr. Saltzman and Dr. Leversedge advised Ms. Arrington-McGee that there were no signs of peripheral entrapment neuropathy and that the evidence was most consistent with cervical radiculopathy.

39. LINA informed Ms. Arrington-McGee by a letter dated February 18, 2019, that the medical statements received from Dr. Brown did not change its prior decision, her claim remained closed, and that Ms. Arrington-McGee could appeal LINA's decision as stated in its July 18, 2018 letter.

40. Ms. Arrington-McGee was seen by Steven Todd Silverman, PA at Duke Orthopaedics of Raleigh on March 26, 2019. She complained of right-sided neck and trapezius pain that radiated to her upper back, upper right arm, and upper pectoral region. Her persistent right upper extremity paresthesias and weakness remained unchanged. She was very uncomfortable and reported that her pain was a twelve on a ten-point scale. Mr. Silverman's physical examination noted tenderness to palpation all along the upper portion of the right trapezius, limited cervical flexion and extension, limited right and left lateral rotation, and a persistent weak right grip. Mr. Silverman prescribed a Medrol dose

pack and ordered a cervical MRI without contrast and a right upper extremity electromyography and nerve conduction velocity ("EMG/NCV") study to be completed before her next appointment.

42. Ms. Arrington-McGee underwent another cervical MRI on April 15, 2019. The results were consistent with the study performed on March 22, 2018.

42. LINA informed Ms. Arrington-McGee by a letter dated April 1, 2019 that she owed it $19,750.70 in overpaid benefits due to her retroactive Social Security disability award.

43. Ms. Arrington-McGee underwent the EMG/NCV study on July 19, 2019. She reported to the examining physician that she had continued right hand and elbow pain. The pain was located over the extensor surface of the elbow and wrist and was worse with use. Ms. Arrington-McGee stated that she had difficulty opening jars and medicine bottles. She advised that her left hand pain was unchanged. The study found electrodiagnostic and ultrasonographic evidence of a mild, right median neuropathy at the wrist, consistent with mild right carpal tunnel syndrome. The report noted that cervical radiculopathy could not be fully evaluated due to Ms. Arrington-McGee's poor tolerance of the needle electromyography.

44. LINA denied Ms. Arrington-McGee's appeal. In a letter dated July 23, 2019, LINA advised Ms. Arrington-McGee that her medical records were reviewed by Dr. Mukund Gundanna, a board-certified orthopedic surgeon, and Dr. Kevin Smith, a board-certified specialist in occupational medicine. The letter states that the medical records failed to substantiate a loss of function to a degree that would prevent Ms.

14

Arrington-McGee from performing her regular occupation or any occupation. The letter states that Ms. Arrington-McGee had the right to submit another appeal within 180 days following her receipt of LINA's letter.

45. LINA's July 23, 2019 denial letter states that Dr. Gundanna opined that no restrictions and limitations were supported by the medical records beyond July 18, 2018 because the physical examination findings reported on May 3, 2018 noted self-reported tenderness to palpation in multiple areas, no evidence of weakness or gait problems, no measured loss of range of motion, and a well-healed incision over the lateral forearm and elbow. Dr. Gundanna stated that there was no evidence to support Dr. Brown's statement in his medical source statement form that Ms. Arrington-McGee could never fine manipulate or simple grasp bilaterally.

46. Dr. Gundanna was asked to review additional medical records and wrote in an addendum to his report that his prior decision was unchanged as the new evidence did not support functional limitations. Specifically, Dr. Gundanna stated that the reports of Ms. Holler dated January 23, 2019, Dr. Saltzman and Dr. Leversedge dated January 15, 2019, and Mr. Silverman dated March 26, 2019, and the MRI report dated April 19, 2019 did not change his opinion. He wrote:

> Review of the additional medical records does not change my prior opinion. Additional medical records do not show evidence of functional limitations. While the additional records note continued pain with palpation along the upper portion of the right trapezius and a mildly weakened right hand grip, these nonspecific exam findings do not indicate specific functional limitations/restrictions. When evaluated on 03/26/19, she reported her pain was a 12/10 with the same clinical findings noted. Her reported symptoms are out of proportion to examination findings, which themselves do not indicate specific functional limitations.

15

47. According to LINA's July 23, 2019 denial letter, Dr. Smith reviewed Ms. Arrington-McGee's medical records for co-existing conditions including hypertension, arthritis, diabetes, GERD, hypothyroidism, benign neoplasm of the skin and pituitary gland, and obesity. Dr. Smith opined that no examination findings indicated that any of those conditions were limiting Ms. Arrington-McGee's ability to perform her activities of daily living.

48. Dr. Smith wrote an addendum to his report, which states:

> After reviewing the additional records, there is no change needed to my prior opinion. The additional clinical findings continue to note findings limited to self-reported tenderness and decreased range of motion due to pain. Imaging has confirmed hardware remains intact. The clinical records as presented would not support the need for any specific activity restrictions.

49. Ms. Arrington-McGee's next appointment with Dr. Brown was on July 24, 2019. She came in for a follow-up of her neck and right arm pain. Dr. Brown wrote in his report that he was going to set up a C-7 nerve root block and that he was hesitant to consider any more surgical intervention given her dysesthetic pain.

50. Mr. Jennings wrote to LINA on September 5, 2019 and advised that Ms. Arrington-McGee intended to submit an appeal and requested "a stay" of LINA's request for repayment of the overpayment until her appeals were exhausted.

51. On January 17, 2020, Mr. Jennings sent LINA a letter from Dr. Brown dated September 5, 2019 and records from Duke Health. He requested that the letter and records be added to Ms. Arrington-McGee's administrative claim file.

52. Dr. Brown's September 5, 2019 letter states that following Ms. Arrington-McGee's July 2017 decompression and fusion she continued to have problems with hand coordination and balance, radicular complaints in her arms, and numbness and tingling. Dr. Brown stated that Ms. Arrington-McGee's condition made it difficult for her to engage in repetitive handling, writing, typing, and handling small objects. He wrote that Ms. Arrington-McGee's pain medication further inhibited her cognitive performance and that she was "100% disabled."

53. Counsel sent LINA another letter dated January 27, 2020 in which he requested that LINA reverse its decision and reinstate Ms. Arrington-McGee's benefits. In a letter to LINA dated February 5, 2020, Mr. Jennings requested "a new appeal review to be done on Ms. Arrington-McGee's claim."

54. LINA issued another denial letter to Ms. Arrington-McGee dated May 6, 2020. The letter states that Ms. Arrington-McGee's file had been reviewed by Dr. Arash Yaghoobian, a board-certified specialist in orthopedic surgery. According to the letter, Dr. Yaghoobian concluded that "the medical information provide (sic) did evidence a severity of symptoms to support continued medically necessary activity restrictions secondary to lateral epicondylitis, CTS and cervical spondylosis with myelopathy." However, the restrictions and limitations Dr. Yaghoobian recommended were minimal:

> Based on the review of your medical records, Dr. Yaghoobian determined that Ms. Arrington-McGee would require the following medically necessary work activity restrictions: lifting, carrying, pushing, pulling occasionally up to ten pounds; no climbing ladders; no crawling; standing, walking, sitting, climbing stairs, stooping, kneeling, crouching, using lower extremities for foot controls unrestricted; no reaching overhead or below waist;

17

Case 1:21-cv-00178-UA-LPA   Document 1   Filed 03/04/21   Page 17 of 19

> occasional reaching at desk level; occasional fine manipulation and simple/firm grasping.

A vocational consultant concluded that Dr. Yaghoobian's recommended restrictions would not prevent Ms. Arrington-McGee from working. The letter advised that Ms. Arrington-McGee that she had exhausted all administrative levels of appeal and that no further appeals would be considered.

55. On January 19, 2021, Ms. Arrington-McGee submitted to LINA additional medical records from Duke Health and the report of a functional capacity evaluation performed by a physical therapist on January 5, 2021. LINA responded by a letter dated January 27, 2021 and advised Ms. Arrington-McGee that her appeal rights had been exhausted.

Claim for Relief
(29 U.S.C. § 1132(a)(1)(B) and (g))

56. The other allegations of this complaint are incorporated by reference.

57. The Policy is an employee welfare benefit plan within the meaning of ERISA. Ms. Arrington-McGee is covered by the Policy.

58. LINA failed to provide Ms. Arrington-McGee a full and fair review of her claim for benefits under the Policy.

59. Ms. Arrington-McGee is entitled to recover from LINA long-term disability benefits under the Policy from July 19, 2018 to the date of judgment, with prejudgment interest, and continuing monthly benefits after the date of judgment for as long as she remains eligible under the terms of the Policy.

60. Ms. Arrington-McGee requests an award of attorney's fees and costs against LINA pursuant to 29 U.S.C. § 1132(g).

<u>Prayer for Relief</u>

Wherefore, having complained of LINA, Ms. Arrington-McGee prays the Court for the following relief:

1. A judgment that LINA is obligated under the terms of the Policy to pay Ms. Arrington-McGee long-term disability benefits for the period from July 19, 2018 to the date of judgment, with prejudgment interest;

2. A judgment that LINA is obligated to pay Ms. Arrington-McGee monthly disability income benefits after the date of judgment for as long as she remains eligible for such benefits under the terms of the Policy;

3. An award of attorney's fees and costs against LINA pursuant to 29 U.S.C. § 1132(g); and

4. Such other relief as the Court deems just and proper.

<u>March 4, 2021</u>  /s/ Andrew Whiteman
Date  Andrew Whiteman
  N.C. State Bar Number 9523
  Whiteman Law Firm
  5400 Glenwood Ave., Suite 225
  Raleigh, North Carolina 27612
  Tel: (919) 571-8300
  Fax: (919) 571-1004
  aow@whiteman-law.com

  *Attorney for plaintiff*